419 So.2d 618 (1982)
R.M.P., a Child, Petitioner,
v.
Carlton JONES, Superintendent, Duval Regional Detention Center, Respondent.
No. 60223.
Supreme Court of Florida.
April 29, 1982.
Rehearing Denied August 31, 1982.
Louis O. Frost, Jr., Public Defender, William P. White, III, Chief Asst. Public Defender and Claudia T. Wright, Asst. Public Defender, Jacksonville, for petitioner.
Paul C. Doyle, Dist. IV Counsel and Leo J. Stellwagen, Asst. Dist. IV Counsel, for State of Fla., Dept. of Health and Rehabilitative Services, Jacksonville, for respondent.
*619 Jim Smith, Atty. Gen., and Jann J. Farrell, Asst. Atty. Gen., Tallahassee, for State of Fla., amicus curiae.
Albert J. Hadeed, of Southern Legal Counsel, Inc., Gainesville, and Harry F. Swanger, of National Juvenile Law Center, Inc., St. Louis, Mo., for Florida Center For Children and Youth, Inc, amicus curiae.
ALDERMAN, Justice.
We review an order of the District Court of Appeal, First District, reported at 392 So.2d 301 (Fla. 1st DCA 1980), in which, pursuant to article V, section 3(b)(4), Florida Constitution (1980), the following question of great public importance was certified to this Court:
Whether a juvenile court may impose conditions upon a dependent child, find the violation of those conditions constitutes contempt of court, and place the child in secure detention in the custody of the Department of Health and Rehabilitative Services for a limited time?
We answer each part of this question in the affirmative and approve the decision of the district court.
In February 1980, R.M.P., a fifteen-year-old girl, was adjudicated a dependent child. In October 1980, she was detained at the Duval Regional Detention Center, charged with being a runaway. After a detention review on November 4, 1980, the juvenile court reaffirmed her dependency and ordered that she be placed in the temporary care and control of her mother. The court's order provided that she meet eight specified conditions, including that she not run away from home again and that she not have any contact with another child, Michelle. The order also stated that any breach of the conditions would lead to contempt proceedings. She continued to associate with Michelle, and within a week both girls had once again run away from home. Based on the breach of two of the court's conditions, an order to show cause alleging indirect criminal contempt of court was entered on November 14, 1980. After a hearing on the order, she was found guilty of contempt of court as to each of the two conditions and subsequently was sentenced to serve twenty days in secure detention for each of the two counts. After the juvenile court denied her motion to vacate judgment, she filed a petition for writ of habeas corpus with the First District Court of Appeal. The district court denied her petition.
Petitioner R.M.P. contends that the powers of disposition of a dependent child set forth in section 39.41(1), Florida Statutes (Supp. 1980),[1] do not authorize the juvenile court to impose conditions of behavior upon her, even though the almost identical language in section 39.11(1), Florida Statutes (Supp. 1980),[2] authorizes the court to place conditions of behavior upon a delinquent child. Respondent Carlton Jones, Superintendent, Duval Regional Detention Center, agrees with R.M.P. The attorney general, on behalf of the State of Florida as amicus curiae, argues to the contrary and urges that we approve the decision of the district court. We agree with *620 the attorney general's interpretation of the statutory language, and we hold that the language "under such reasonable conditions as the court may direct" authorizes the court to impose reasonable conditions of behavior upon dependent as well as delinquent children. Furthermore, we find that the two conditions in question, the violation of which led to the contempt finding, were reasonable conditions to impose upon dependent child R.M.P. Thus, as to the conditions imposed, the order issued by the juvenile court is supported by statutory authority and is a valid order.
Since we find a valid court order and since R.M.P. does not dispute the juvenile court's finding that she disobeyed the order, we hold that the court is authorized to invoke its inherent contempt power against R.M.P. for her willful refusal to obey the order. It has long been the rule in Florida that courts have inherent contempt power to punish for violation of a valid court order. Ducksworth v. Boyer, 125 So.2d 844 (Fla. 1960); Ex parte Earman, 85 Fla. 297, 95 So. 755 (1923). In addition to inherent contempt power, Florida courts have the statutory power to punish for contempt. § 38.22, Fla. Stat. (1979).[3]
Although R.M.P. does not question the court's power to punish for contempt, she argues that such power must be used within the constraints of chapter 39 (Florida Juvenile Justice Act) when dealing with a dependent child. She contends that the act committed by her (running away) which led to the contempt finding was an act of dependency under the provisions of chapter 39 and cannot support a finding of criminal contempt. Additionally, she contends that the holding in J.M.J. v. State, 389 So.2d 1208 (Fla. 1st DCA 1980), supports her argument.
In J.M.J., the First District held invalid a commitment order adjudicating a child delinquent for violating the probation terms of a previous order prohibiting truant and runaway behavior. In that case, however, it was clear that the trial court intended to employ "chapter 39 mechanisms" to deal with J.M.J.'s behavior, and the First District expressly left open the question of whether the court could use its inherent contempt power to punish a juvenile outside the ambit of the juvenile statutes. 389 So.2d at 1210, n. 4.
In the present case, the juvenile court indicated that it was using its inherent contempt power to find R.M.P. guilty of indirect criminal contempt. Although the court had the option of proceeding under the provisions of chapter 39, it did not, and we find that the court did not abuse its authority by using its inherent contempt power to punish a dependent child for disobeying a valid court order.[4]
Finally, we hold that a dependent child who has been adjudged guilty of indirect criminal contempt under the court's inherent contempt power can be placed in secure detention in the custody of the Department of Health and Rehabilitative Services. R.M.P. contends that chapter 39 prohibits placing her in secure detention as a "status offender" (runaway). The juvenile court, however, sentenced her not for being a runaway but for being a criminal contemnor. Since the court did not find her in contempt under chapter 39, the punishment options available to the court are not limited by those in chapter 39.
Accordingly, we approve the decision of the district court.
It is so ordered.
*621 ADKINS, BOYD, OVERTON and McDONALD, JJ., concur.
SUNDBERG, C.J., dissents with an opinion.
SUNDBERG, Chief Justice, dissenting.
I must respectfully dissent. Although I agree that a juvenile court may impose reasonable conditions upon a dependent child and find the violation of those conditions constitutes contempt of court, I cannot accept the placement of a dependent child in secure detention as a sanction for contempt.
It seems crystal clear to me that the public policy of this state as enunciated by the legislature in chapter 39, Florida Statutes, eschews the placement of "status offenders" in secure detention. This appears to me to be a sound policy which comports with our concepts of substantive due process and fairness. We do not confine individuals for non-criminal conduct or status except in limited instances where the mental condition of the individuals makes them a threat to themselves or others.
Although I do not condone willful violation of legitimate court orders, nevertheless, I am equally unwilling to approve secure detention as a sanction for juvenile status offenders. To justify such a sanction under the principle of inherent judicial authority results, I believe, in a subversion of the policy of chapter 39 which comprehensively deals with the juvenile justice system.
NOTES
[1] Section 39.41(1) in pertinent part provides:

(1) When any child is adjudicated by a court to be dependent, the court having jurisdiction of the child shall have the power, by order, to:
(a) Place the child under the protective supervision of an authorized agent of the department, either in the child's own home or, the prospective custodian being willing, in the home of a relative of the child or in some other suitable place under such reasonable conditions as the court may direct. (Emphasis added.)
[2] Section 39.11(1) in pertinent part provides:

(1) When any child shall be adjudicated by the court to have committed a delinquent act, the court having jurisdiction of the child shall have the power, by order in which is stated the facts upon which a determination of a sanction and rehabilitative program was made at the disposition hearing, to:
(a) Place the child in a community control program under the supervision of an authorized agent of the department or any other person or agency specifically authorized and appointed by the court, either in the child's own home or, if the prospective custodian is willing, in the home of a relative of the child or in some other suitable place under such reasonable conditions as the court may direct. (Emphasis added.)
[3] Section 38.22 provides:

Every court may punish contempts against it whether such contempts be direct, indirect, or constructive, and in any such proceeding the court shall proceed to hear and determine all questions of law and fact.
[4] We note that in a juvenile dependency proceeding, the child may not necessarily be represented by counsel. However, in the situation where indirect contempt proceedings become necessary, the juvenile is entitled to be represented by counsel. See Fla.R.Crim.P. 3.840 (Indirect Criminal Contempt); Fla.R.Juv.P. 8.280 (Indirect Contempt).